UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY SWAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-00326 JAR |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Timothy Swain's ("Swain") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.

**I.     Background**

Swain filed an application for disability insurance benefits on March 23, 2011, alleging disability as of April 10, 2010, as a result of injuries sustained in a motorcycle accident. After his application was denied at the initial administrative level, he requested a hearing before an administrative law judge ("ALJ"). Following a hearing on November 29, 2012, the ALJ issued a written decision on January 14, 2013, denying his application. Swain's request for review by the Appeals Council was granted and the case was remanded on January 9, 2014. The Appeals Council generally directed that further consideration be given to Swain's maximum residual

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

functional capacity ("RFC"), and in doing so, that treating medical source opinion be evaluated and an explanation be made for the weight given to that opinion evidence; vocational expert evidence was directed as needed (Tr. 15). A second hearing was held on June 16, 2014. On August 14, 2014, the ALJ found Swain had the RFC to perform certain jobs that exist in significant numbers in the national economy, and was thus not disabled under the Act. Swain filed a request for review by the Appeals Council on September 15, 2014. The Appeal Council denied the request on January 14, 2016. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

**II.     Facts**

The Court adopts Swain's Statement of Facts (Doc. No. 13-1) and Defendant's Statement of Additional Facts (Doc. No. 18-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

**III.    Standards**

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;
    (2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the

claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph B criteria"). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

IV.     Decision of the ALJ

The ALJ found that Swain had the severe impairments of discogenic and degenerative disorders of the neck and back, seizures, shoulder dysfunction, an affective mood disorder, and an anxiety disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In assessing Swain's mental impairments at steps two and three of the disability evaluation, the ALJ considered the "paragraph B" criteria discussed above and concluded that Swain has no restriction in activities of daily living, and moderate difficulties in social functioning and concentration, persistence and pace. Swain had experienced no episodes of decompensation.

After considering the entire record, the ALJ determined that Swain had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he can only occasionally climb ramps and stairs, stoop, or crouch; never climb ladders, ropes, or scaffolds, balance, kneel, or crawl; only occasionally use his left upper extremity for overhead reaching; and must avoid concentrated exposure to hazards such as unprotected heights, dangerous machinery, and vibration. In addition, the ALJ determined Swain is capable of performing simple, routine tasks in a stress free environment, defined as one in which there are no more than occasional changes and where contact with supervisors, coworkers, and the public is only occasional. The ALJ relied

on the testimony of a vocational expert that an individual with Swain's RFC and vocational factors could perform certain jobs that existed in significant numbers in the national economy, such as merchandise marker, car wash attendant, and housekeeping cleaner. Thus, the ALJ found Swain was not disabled as defined by the Act.

V.     **Discussion**

In his appeal of the Commissioner's decision, Swain challenges the ALJ's RFC determination. Specifically, he argues that (1) the RFC does not include all of the mental limitations supported by the record, specifically his ability to complete a normal workday or workweek due to psychological symptoms, and (2) the physical limitations of the RFC are not supported by "some medical evidence." (Doc. No. 13 at 2)

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011). It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

**Mental RFC**

Swain's treating psychiatrist, Mohinder Partap, M.D., completed a Medical Source Statement (Mental) on November 2, 2012 (Tr. 542-43). Dr. Partap opined that Swain was moderately limited in his ability to complete a normal workday or work week without interruption from psychologically based symptoms and to perform at a consistent pace without

6

an unreasonable number and length or rest periods (Tr. 543). He further opined that Swain was moderately limited in his ability to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to travel in unfamiliar places or use public transportation (id.). Dr. Partap gave Swain a Global Assessment of Functioning (GAF) score of 45[2] (Tr. 534). Swain argues that while the ALJ gave "great weight" to Dr. Partap's opinion (Tr. 22), she erred by failing to include all limitations noted in Dr. Partap's opinion in her RFC determination and explain her reasons for not doing so. The Commissioner responds that Swain's argument is unavailing because the ALJ did not afford great weight to the entirety of Dr. Partap's opinion, finding the more severe limitations unsupported by the record.

As a threshold matter, although some medical evidence must support an RFC, it is not the only evidence an ALJ considers. See Masterson v. Barnhart, 363 F.3d 731, 737-38 (8th Cir. 2004) (noting that RFC is based on all the record evidence); Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (same). As for medical opinions in particular, the ALJ is under no obligation to adopt all the limitations of a particular physician's opinion. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011); see also Norris v. Colvin, No. 1:12CV0216 TCM, 2014 WL 1056792, at *17 (E.D. Mo. Mar. 19, 2014).

The ALJ assigned "great weight" to Dr. Partap's opinion to the extent he found Swain to be "moderately limited particularly in regard to stress tolerance and social interaction," but little weight to the GAF score because it was a onetime assessment, and because such serious

---

[2] A Global Assessment of Functioning (GAF) score is a determination based on a scale of 1 to 100 of a "clinician's judgment of the individual's overall level of functioning." Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 662 n. 2 (8th Cir. 2003) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000)). The Eighth Circuit has noted that a GAF score between 41 and 50 "reflects *serious limitations* in the patient's general ability to perform basic tasks of daily life." Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (emphasis added).

functional limitations were inconsistent with Dr. Partap's treatment records showing only mild to moderate dysfunction that improved with medication with no adverse side effects reported (Tr. 22-23, 534-36).

Treatment records from June 2011, December 2011, and September 2012, all report improvement with medication (Tr. 534-36). In November 2012 Dr. Partap attributed Swain's reported increase in anger to the fact that his neurologist had told him he did not qualify for disability and that he had not been taking his antidepressant medication for three weeks (Tr. 633). By the following month, Swain had calmed down, reported sleeping well, and said he could "go places and walk around" (Tr. 637). In March 2013, Swain reported he was stable and content with his life, and that he was able to go to parties with no anxiety issues (Tr. 633). In June 2013, he reported his social anxiety was under control (Tr. 633). Swain exhibited an anxious and depressed mood in August 2013, but Dr. Partap made no changes to his medication (Tr. 716); by his next appointment in November 2013, Swain's social anxiety was under control (Tr. 713). He reported feeling calm and happy and more sociable and was able to maintain his focus during conversations (Tr. 713). In June 2014, Swain was stable and denied social anxiety (Tr. 707). In sum, the record shows that Swain's psychiatric symptoms were managed with medication (Tr. 22-23). If an impairment can be controlled by treatment or medication, or is amenable to treatment, it does not support a finding of total disability. See Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014).

The ALJ also noted that Swain was able to complete his routine daily activities without developing increased anxiety or depression. (Tr. 22-23) He is able to perform household chores, shop and visit with friends, and retains adequate concentration to prepare meals and drive (Tr. 23). To be sure, the ability to do these kinds of activities alone is insufficient reason to discredit

Swain's subjective complaints. See Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). But the extent of his activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases).

These were adequate reasons for the ALJ to afford less than controlling weight to that portion of Dr. Partap's opinion finding moderate limitations in Swain's ability to complete a normal work day or work week without interruption from psychologically based symptoms. Similarly, the hypothetical question posed by the ALJ to the vocational expert properly excluded such limitations because they were unsupported by the record as a whole. The hypothetical question need only include those impairments the ALJ finds supported by the record. See Milam, 794 F.3d at 985.

Further, the ALJ did not err in failing to explain precisely why she excluded certain limitations. An ALJ is not required to refute every alleged limitation. See McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation."). Here, it is clear from the ALJ's review and analysis of the record evidence that she considered all of Swain's limitations but only included those she found credible. (Tr. 18-23) See McGee v. Colvin, No. 14-04035-CV-C-DGK, 2015 WL 58484, at *4–5 (W.D. Mo. Jan. 5, 2015).

**Physical RFC**

Swain further argues the ALJ erred in determining his physical RFC in the absence of medical evidence addressing his functional capabilities (Doc. No. 13 at 7). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical

evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). However, there is no requirement that an RFC finding be supported by a specific medical opinion. Id. (citing Myers v. Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); Perks v. Astrue, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)); see also Kinder v. Berryhill, No. 1:16CV7ACL, 2017 WL 1177707, at *7-8 (E.D. Mo. March 30, 2017). In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." Hensley, 829 F.3d at 932 (quoting Johnson v. Astrue, 628 F.3d 991, 995 (8th Cir. 2011)).

The Court concludes the ALJ cited to sufficient medical evidence in determining Swain's RFC. The ALJ noted, for example, that in a consultative physical examination performed by Barry Burchett, M.D., on June 10, 2011, Dr. Burchett opined there was no evidence of compressive neuropathy in Swain's upper extremities, and no spasm or significant tenderness in his back (Tr. 468). Swain walked with a normal gait and did not require an assistive device. He appeared stable at station and comfortable in the supine and sitting positions. (Tr. 466) His straight leg raising was negative, his sensation and motor function were normal, and he was able to perform tandem gait and squat without difficulty (Tr. 466-67, 469). Swain's grip strength was intact (Tr. 469). His range of motion was normal except for some decrease of shoulder elevation and abduction on the left side and a slightly less than full forward flexion of the hip (Tr. 469-70). Dr. Burchett also noted that despite Swain's reported seizures, his neurological examination was "unremarkable and nonfocal" (Tr. 468). In fact, Swain generally had normal neurological examinations (Tr. 429, 448, 499, 609, 611, 642-43, 687, 689, 691, 693, 695, 697, 699, 701), and

the ALJ noted that Swain's neurologist, Venkat Rao, M.D., told him that neurologically he did not qualify for disability (Tr. 21, 608).

Further, following a discectomy and a cervical laminotomy/foraminotomy decompression of the nerve root in July 2012, Swain reported overall improvement and no seizure activity in the previous three months (Tr. 555-606). Swain was treated for a seizure in April 2013, but admitted he had only been taking half the prescribed dose of his anti-seizure medication due to financial concerns (Tr. 614-627). Although he was urged to follow up with his neurologist, Swain elected instead to seek pain management treatment in November 2013; he reported decreased headache and left shoulder pain with injections (Tr. 640-44). A subsequent pain flare was attributed to running out of pain medication for several days (Tr. 698); a pain flare in February 2014 was attributed to a long driving trip (Tr. 693). Following treatment, Swain reported a decrease in pain in March 2014. In April, 2014, Swain reported he was doing ok and demonstrated only mildly decreased range of motion on examination (Tr. 687-88).

This medical evidence is sufficient to support the ALJ's finding that Swain can perform light work, particularly where other evidence in the record is consistent with the ALJ's conclusions. Thompson v. Colvin, 174 F. Supp. 3d 1080, 1088 (E.D. Mo. 2016) (citing Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008); Flynn v. Astrue, 513 F.3d 788, 789 (8th Cir. 2008)).

Finally, Swain argues the ALJ erred by failing to provide a narrative statement as to how the medical evidence supported the RFC for a limited range of light work. Because the ALJ is not required "to follow each RFC limitation with a list of specific evidence on which the ALJ relied," the Court rejects this argument. Hilgart v. Colvin, No. 6:12–0322–DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ's RFC determination clearly shows careful

consideration of all evidence related to Swain's credible limitations, and the Court finds no error in its construction. See Wildman, 596 F.3d at 969.

### VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 17th day of May, 2017.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**